Isadore H. Sherman
            vs.            Div. No. 28784.
Charles C. Sherman

July 16, 1934.

CHURCHILL, J. Divorce; heard on the merits.

This is a petition for divorce from bed and board, based on the grounds of extreme cruelty and neglect to provide. The respondent husband has filed a cross-petition on the ground of wilful desertion.

The petitioner is now 70 years of age and the respondent is over 80 years of age. This is a second marriage for each of the parties and each has children by a former spouse. The respondent is a farmer living in South Kingstown in the village of Matunuck. The petitioner answered an advertisement for a housekeeper and after two months acting in that capacity for the respondent a marriage on the 17th of May, 1914, was celebrated between them. In 1924 the respondent paid the petitioner the sum of $2500 on her agreement to release dower rights in his real estate and also paid her $500 in addition, as he testified to keep her contented.

In November 1928 the petitioner filed a petition for divorce from bed and board on the ground of extreme cruelty in the Superior Court for Washington County and at some time before the hearing on the merits in April 1929 left the respondent's home. This petition was denied and dismissed in April 1929 and the petitioner did not return to the home of the respondent until some time in the summer of 1932. She lived with the respondent at his home in Matunuck until July 17, 1933, when she left him.

The petition for divorce was filed May 7, 1934.

As to the cross-petition, it may be briefly disposed of. It is clear that the respondent on his cross-petition does not bring himself, under the facts recited above, within the provisions of Chapter 291, Sec. 2, Gen. Laws of 1923, in respect to desertion.

Coming to the petitioner's case and as to non-support:

On all the testimony it is clear that the petitioner did not return to the respondent's home until the summer of 1932 and it is established by the testimony of her son that she left the respondent's home in July 1933. The petitioner filed her petition on May 7, 1934, so that non-support is not made out for one year next previous to the filing of the petition, unless there was neglect to provide during the time when she lived with the respondent. Her testimony on that phase of the case is not clear and consists of complaints that she was not provided with sufficient food, that she was not provided with sufficient clothes and with a sufficient home. All this is denied by the respondent and two neighbors, Mr. Chase and Mrs. Thornton. In addition to the testimony of these witnesses for the respondent, Dr. Serbst testified that when he saw the petitioner in August of 1933, after she left the home of the respondent, she appeared to be a well-nourished woman. Two witnesses for the petitioner testified that on occasions they had entertained her in Providence and that on such occasions she appeared to be very hungry.

Portions of the testimony which involve non-support revolve around the conditions under which the petitioner claims she was forced to live and the acts of the respondent, and will be

considered under the phase of the case involving extreme cruelty. It is sufficient to say that the charge of neglect to provide is not made out by preponderance of the evidence.

The charges of extreme cruelty fall into two classes: those involving acts of physical violence or threats of physical violence, and conduct of the kind generally described as mental cruelty.

As to physical violence:

The petitioner testified that during the last period the parties lived together, the respondent had struck her, threatened her with a gun, threw various objects at her, such as potatoes and other vegetables, and poured a bottle of syrup over her and had thrown hot water on her, and attempted at one time to tie her to a stake, and had used abusive language towards her.

There is no corroboration of these alleged acts of violence and abuse. There is no testimony of complaints made to friends or relatives at or about the time when it is alleged by petitioner the acts of violence were committed, and it is not pretended that she ever exhibited to anyone any marks on her body which she claimed were inflicted by her husband, or that any one ever saw any traces of violence.

The respondent very candidly admitted throwing cold water on his wife; admitted on one occasion throwing potatoes at her, and striking her on another occasion, but denies all the other alleged acts of cruelty, and says in avoidance that on all such occasions she struck the first blow and that what he did was in the way of self defence.

In the absence of corroboration, the Court is obliged to decide this point in the uncertain light of highly interested testimony. Taking into consideration all the testimony on the point, the Court is of the opinion that the probabilities point to the conclu-sion that the acts of physical violence admitted by the respondent took place in the course of mutual combats in which the petitioner was the aggressor or the inciting cause.

Much testimony was given as to the living conditions in the home occupied by the petitioner and the respondent. The structure has been variously described as a shack, cottage or house. The respondent owned a large farmhouse on the premises in which the parties lived previous to 1929. In 1932, when the petitioner returned, the respondent was living in a much smaller structure which had been built for some time. It was situated near the farmhouse. It was a three-room abode, unplastered, covered with tar paper instead of shingles, and with a piazza on the front. It is claimed on behalf of the petitioner that it was not fit for human habitation and that, in addition, it was infested with flies, that it was not wind or weather proof, and it is claimed that the respondent was in the habit of leaving dead rats or dead fowl in the near vicinity of the home and that a manure pile was in close proximity.

It must be pointed out here that the petitioner knew of the general living conditions which were apparent to her when she voluntarily returned to live with the respondent. The respondent was a farmer 80 years of age, and the petitioner, living as she had on the premises since 1914, was well acquainted with his habits and with the living conditions on a farm of the character operated by the respondent, and with the difficulties which might be attendant on living in the smaller home. When she went back she voluntarily submitted to some of the discomforts attending her life there. The neighbors who testified as to the surroundings did not state that conditions were unusual if the fact that active farming operations were being carried on by the respond-

ent were taken into consideration. Mr. Chase and Mrs. Thornton denied the presence of dead animals to any such degree as has been testified to by the petitioner and her witnesses, and their opportunities for observation were better than those of the two witnesses who testified on behalf of the petitioner.

The respondent admitted there was a leak at one corner of the house, said it was not sufficient to cause discomfort to those in the house and that otherwise the structure was wind and water tight. There is corroboration of his testimony in this respect against the testimony produced by the petitioner.

The petitioner claims she was obliged to leave the home of the respondent in 1933 owing to the situation prevailing there. There is much doubt if this is the fact. There is testimony apparently credible that she left for other reasons and reasons not connected with living conditions at her husband's home or on account of his conduct.

If all the testimony be weighed and considered, the Court is unable to find in respect to the acts of the respondent that the respondent wilfully and designedly pursued a course of conduct calculated to injure the petitioner.

*Grant* vs. *Grant*, 44 R. I. 169.

The cross-petition is denied and dismissed, and the original petition is hereby denied and dismissed.

For petitioner: Walter I. Sundlun, Esquire.

For respondent: E. W. Day, Esquire.